IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **Chapter 11** |
| **UGHS SENIOR LIVING, INC., <u>et al.</u>,** | § | |
| | § | **Case No. 15-80399** |
| Debtors.[1] | § | |
| | § | **Joint Administration Requested** |
| | § | |

**EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING
SECURED POST-PETITION FINANCING ON A SUPER PRIORITY BASIS
PURSUANT TO 11 U.S.C. §§ 363, 364, AND 507(B); (II) GRANTING RELIEF FROM
THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §362; (III) GRANTING RELATED
RELIEF; AND (IV) SCHEDULING A FINAL HEARING PURSUANT TO
<u>BANKRUPTCY RULE 4001</u>**

**THE DEBTORS HAVE REQUESTED THAT THIS MOTION BE
CONSIDERED AT THE DEBTORS' FIRST DAY HEARINGS**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT
YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY
CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF
YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE
A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU
MUST FILE AND SERVE YOUR RESPONSE WITHIN 23 DAYS OF THE
DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE
WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT
FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED
WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE
MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST
ATTEND THE HEARING.  UNLESS THE PARTIES AGREE
OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE
HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR
ATTORNEY.**

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: UGHS Senior Living, Inc. (9334); TrinityCare Senior Living, LLC (1655), UGHS Senior Living Real Estate of Port Lavaca, LLC (0012), UGHS Senior Living Real Estate of Pearland, LLC (0653), UGHS Senior Living Real Estate of Knoxville, LLC (2405), UGHS Senior Living of Pearland, LLC (0704), UGHS Senior Living of Port Lavaca, LLC (0762), UGHS Senior Living of Knoxville, LLC (0826), TrinityCare Senior Living of Covington, LLC (4360),UGHS Senior Living Real Estate, LLC (5553), and TrinityCare Lighthouse of Pearland, LLC (2681).

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 23 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

The debtors and debtors in possession in the above captioned cases (collectively, the "Debtors") hereby move (this "Motion") this Court for entry of an interim order substantially in the form attached hereto as **Exhibit A** (the "Interim Order"), pursuant to Sections 105, 362, 363, 364 and 507(b) of Title 11 of the United States Code, 11 U.S.C. §§101, et seq. (as amended, the "Bankruptcy Code"), Rules 2002, 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 4001, (i) authorizing the Debtors to obtain post-petition financing; (ii) granting related relief; and (iii) scheduling a final hearing pursuant to Bankruptcy Rule 4001(b) and (c). In support of this Motion, the Debtors, by and through their undersigned proposed counsel, respectfully represent:

## SUMMARY OF THE MOTION

1. The Debtors seek immediate authority on an interim basis to borrow sufficient funds under a debtor-in-possession secured financing facility ("Post-Petition Financing") to fund the operating expenses and working capital needs of the Debtors. The Debtors also request a hearing for final approval of the proposed Post-Petition Financing.

## JURISDICTION AND VENUE

2. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

5170176v2

3.      The legal predicates for the relief requested herein are Bankruptcy Code sections 105, 362, 363, 364, and 507(b), Bankruptcy Rules 2002, 4001, and 9014, and Local Bankruptcy Rule 4001.

## BACKGROUND

**I.     The Chapter 11 Cases**

4.      On the date hereof (the "Filing Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

5.      The Debtors continue to manage and operate their business as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

6.      To date, no creditors' committee has been appointed in the Chapter 11 Cases by the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee"). No trustee or examiner has been appointed in the Chapter 11 Cases.

**II.    The Debtors' Prepetition Corporate and Capital Structure**

7.      Prior to the Filing Date, the ultimate parent of the Debtors—University General Health System, Inc. ("UGHS")—entered into that certain Loan and Security Agreement (as amended, the "Prepetition Loan Agreement") among UGHS, the several entities party thereto as lenders (the "Prepetition Lenders"), and White Oak Asset Finance, LLC ("White Oak"), as administrative Agent ("Prepetition Agent"), as amended by that certain First Amendment to Loan and Security Agreement and Waiver, dated as of April 23, 2014, that certain Second Amendment to Loan and Security Agreement, dated as of May 1, 2014, and that certain Third Amendment to Loan and Security Agreement dated as of May 22, 2014, (collectively, the "Prepetition Loan Agreement" and with all related documents, the "Prepetition Loan

3

Documents"). Pursuant to the Prepetition Loan Agreement, UGHS is indebted to the Prepetition Agent in a principal amount of $6,035,000, plus accrued, but unpaid interest, fees, including attorneys' fees, expenses and other costs (the "Prepetition Obligations"). With respect to the collateral securing the Prepetition Loan Agreement, the Prepetition Agent entered into that certain Pledge Agreement, dated as of March 17, 2014 (the "UGHS Pledge Agreement"), made among UGHS, the other parties as may become "Pledgors" thereunder after the date of such agreement, and the Prepetition Agent concerning the pledge by UGHS in favor of the Prepetition Agent of a security interest in and lien upon (a) all Ancillary Services Equity Interests and all Proceeds of the foregoing and (b) all Senior Living Equity Interests and all Proceeds of the foregoing; in each of the foregoing cases, as more fully described in the UGHS Pledge Agreement. Specifically, pursuant to the Pledge Agreement, UGHS pledged to the Prepetition Agent all of its record and beneficial ownership interests in UGHS Ancillary Services, Inc. and Debtor UGHS Senior Living, Inc. ("UGHS Senior Living"). In turn, also on March 17, 2015, UGHS Senior Living and UGHS Ancillary Services, Inc. entered into a Pledge Agreement with the Prepetition Agent (the "Senior Living Pledge Agreement" and together with the UGHS Pledge Agreement, the "Pledge Agreements"), pledging all of their record and beneficial ownership interests in certain pledged companies, including, but not limited to the following Debtors: UGHS Senior Living of Pearland, LLC; UGHS Senior Living of Port Lavaca, LLC and UGHS Senior Living of Knoxville, LLC (together with UGHS' pledge of record and beneficial ownership interests in UGHS Senior Living, the "Senior Living Collateral").

      8.    As of the date on which UGHS commenced its bankruptcy proceeding, the Prepetition Agent asserts a secured claim against UGHS in the aggregate amount of $6,035,000,

plus accrued and unpaid pre-petition and post-petition interest, fees, expenses and other amounts chargeable under the Prepetition Loan Documents.

## III.    The Process Leading to the Post-Petition Financing

         9.     The Debtors conducted a search to identify potential DIP lenders.  Without providing initial work fees or exclusivity, several financial institutions were contacted (including the proposed stalking horse bidder, the Debtors' pre-petition secured lender, and a significant unsecured creditor of the Debtors).   To date, no other party has been able to commit to alternative financing on as or more favorable terms.

<strong>RELIEF REQUESTED</strong>

         10.     By this Motion, pursuant to Bankruptcy Code sections 362, 363, 364, and 507(b), Bankruptcy Rules 2002, 4001, and 9014, and Local Bankruptcy Rule 4001, the Debtors request the following relief as provided for in the Interim Order:

         (a)     authorization for the Debtors to obtain the post-petition financing substantially in the form attached hereto as **<u>Exhibit B</u>** from the DIP Lenders (as defined below), consisting of a senior secured term loans in an aggregate original principal amount equal to $1,400,000.00 (the "<u>DIP Loan</u>")[2] to be funded in two tranches — (1) $350,000.00 to be funded on the entry of this Interim Order and (2) $1,050,000 to be funded upon the entry of the final order pursuant to that Loan Agreement among the Debtors, the DIP Lenders and White Oak, as administrative agent (the "Administrative Agent") (the "<u>New Loan Agreement</u>," and together with all related documents, including any exhibits thereto, the "<u>New Loan Documents</u>").

---

[2]    As used herein, the term "DIP Loans" refers to any and all credit extended and loans made to the Debtors pursuant to the New Loan Agreement.

5170176v2

(b)     authorization for the Debtors to execute and deliver to the Administrative Agent any other document of any kind required to be executed and delivered in connection with the New Loan Agreement;

(c)     authorization for the Debtors to comply with and perform all of the terms and conditions contained in the New Loan Agreement and other New Loan Documents, including repayment of amounts owing, with interest and any other charges, to the Administrative Agent in accordance with and subject to the terms and conditions set forth in the New Loan Documents and Interim Order;

(d)     authorization for the Debtors to pay all fees and expenses, including, without limitation, all reasonable fees and expenses of professionals engaged by the Administrative Agent in accordance with the terms of the New Loan Agreement;

(e)     the granting of super-priority claims under section 364(c)(1) of the Bankruptcy Code to the Administrative Agent payable from, and having recourse to, all present and after-acquired personal and real property of the Debtors and all of their respective affiliates (as defined in the New Loan Agreement, "Collateral"), subject to the Carve-Out (as defined in the Interim Order);

(f)     subject only to and effective upon entry of the Final Order, the limitation of the Debtor's right to surcharge against collateral pursuant to section 506(c) of the Bankruptcy Code;

(g)     authorization for the Debtors to borrow from the DIP Lenders, on the terms and subject to the conditions and limitations in availability set forth in the New Loan Documents and the Interim Order, the amount of the DIP Loan;

6

(h)     authorization for the Debtors to use the proceeds of the DIP Loan in the operation of the Debtors' business, on the terms and subject to the conditions contained in the New Loan Documents and the Interim Order;

(i)     pursuant to Bankruptcy Rule 4001, that an interim hearing on the Motion be held before this Court to consider entry of the Interim Order authorizing the Debtor, on an interim basis, to obtain postpetition financing from the DIP Lenders under the New Loan Documents and the Interim Order (including the relief request outlined in this Motion), in accordance with the budget prepared by the Debtors and approved by Administrative Agent (the "Budget"), a copy of which is attached as **Exhibit C**; and

(j)     that this Court schedule a final hearing (the "Final Hearing") to consider entry of the Final Order  authorizing on a final basis, inter alia, the Post-Petition Financing.

## RELIEF REQUESTED

### I.     Summary of Post-Petition Financing[3]

11.     The Debtors have been unable to obtain post-petition financing on an unsecured basis.  After negotiation, the Debtors have reached an agreement with the Administrative Agent to provide the Post-Petition Financing.  The Debtors negotiated the Post-Petition Financing at arm's-length and have determined that it is the best proposal under the circumstances. The principal terms of the Post-Petition Financing are as follows:

| Lenders: | The DIP Financing will be provided by funds or accounts managed by or affiliated with the Administrative Agent as selected by the Administrative Agent in its sole discretion (collectively, the "DIP Lenders"). |
|---|---|

---

[3]     The description provided herein is a summary of principal terms of the Post-Petition Financing. Please refer to the New Loan Documents for exact terms and conditions.

5170176v2

| | |
|---|---|
| **Borrowers:** | UGHS Senior Living, Inc., TrinityCare Senior Living, LLC, UGHS Senior Living of Pearland, LLC, UGHS Senior Living of Knoxville, LLC, UGHS Senior Living of Port Lavaca, LLC, UGHS Senior Living Real Estate of Pearland, LLC, UGHS Senior Living Real Estate of Knoxville, LLC, UGHS Senior Living Real Estate of Port Lavaca, LLC, UGHS Senior Living Real Estate, LLC, UGHS Behavioral Health Management Services, Inc., TrinityCare Senior Living of Covington, LLC, and TrinityCare Lighthouse of Pearland, LLC (together with the Administrative Agent and the DIP Lenders, the "<u>Loan Parties</u>"). |
| **Loan Amount:** | Senior secured Term Loans in an aggregate original principal amount equal to $1,400,000.00. |
| **Method of Funding:** | The Term Loans will be funded in two tranches into a deposit account in the name of UGHS Senior Living, Inc., subject to a fully-blocked control agreement (in form and substance satisfactory to the Administrative Agent in its sole discretion) in favor of the Administrative Agent as follows: (i) the first advance in the amount of $350,000.00 (the "<u>First Advance</u>") will be funded upon the entry of the Interim Order and (ii) the second advance in the amount of $1,050,000.00 (the "<u>Second Advance</u>") will be funded upon the entry of the Final Order. |
| **Use of Proceeds:** | The proceeds of the DIP Financing will be used solely for: (a) the payment of normal operating expenses consistent with the Budget, (b) the payment of interest, fees and expenses relating to the DIP Financing and professional fees related thereto and approved by the DIP Agent, (c) the payment of the Carve-Out Amount, and (d) the payment of all fees and expenses incurred by the DIP Agent in connection with these bankruptcy proceedings.. |
| **Interest Rate:** | The outstanding principal balance of the Term Loans will bear interest at an annual rate equal to the sum of: (a) the LIBOR Index Rate plus (b) 12.00% per annum, payable monthly in arrears in cash. |
| **Default Interest:** | After the occurrence of an Event of Default (as defined in the New Loan Agreement) the outstanding principal balance of the Term Loans and any and all other amounts owing to the Administrative Agent or DIP Lenders will be increased by two hundred basis points *per annum* above the highest rate of interest otherwise applicable to any of the obligations owing to the Administrative Agent or DIP Lenders. |
| **Security:** | (i)    (w) pursuant to Bankruptcy Code § 364(c)(2), a perfected first priority Lien on all Collateral that is property of each Loan Party that is otherwise not encumbered by a valid perfected and non-avoidable Lien as of the Petition Date or a valid and perfected Lien in existence at the time of such commencement that is perfected subsequent to such commencement as permitted by Bankruptcy Code § 546(b), in the amount of, and to the extent that, the proceeds of the Term Loans are received by the Loan Parties, (x) a priming first priority perfected security interest pursuant to |

8

|  | Bankruptcy Code §§ 364(c)(2) and 364(d) in substantially all presently owned and hereafter acquired assets of each Borrower, subject only to the Liens of Lancaster Pollard, (y) a priming first priority perfected security interest pursuant to Bankruptcy Code §§ 364(c)(2) and 364(d) in the Designated Account and all cash contained therein and (z) a first priority perfected security interest pursuant to Bankruptcy Code §§ 364(c) and 364(d) in the proceeds of any Avoidance Actions; and |
|---|---|
|  | (ii) To the extent that all cash and checks of the Loan Parties currently in their possession, bank accounts, lockbox accounts or otherwise, and the proceeds thereof (other than any cash that acts as cash collateral for prepetition obligations owing to Lancaster Pollard), if any, are proceeds of the Collateral, the relevant Loan Parties shall deliver such proceeds to the Administrative Agent, and thereafter the Loan Parties and any successor to the Loan Parties, including, without limitation, any successor trustee or trustees, shall immediately deliver any and all payments or proceeds realized upon the sale, liquidation, collection or disposition of the Collateral or Senior Living Collateral, including, without limitation, the proceeds of sales authorized pursuant to Bankruptcy Code §363 or any Reorganization Plan which come into their possession to the Administrative Agent in the form received (together with any necessary endorsements thereto) for deposit into the Designated Account. |
|  | (iii) Super-priority over administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code for the payment of all obligations under the Post-Petition Credit Facility, subject only to the Carve-Out. |
| **Carve-Out:** | The Budget will include an administrative expense carve out acceptable to the Administrative Agent for (a) incurred or accrued and pending applications for professional fees and expenses of the Loan Parties' professionals and professionals for any official committee of unsecured creditors incurred in the Bankruptcy Cases to the extent provided for in the Budget and allowed by the Bankruptcy Court and incurred prior to the expiration of the New Loan Agreement (the "<u>Termination Date</u>"), (b) professional fees and expenses of the Loan Parties' professionals and professionals for any official committee of unsecured creditors incurred in the Bankruptcy Cases after the Termination Date to the extent allowed by the Bankruptcy Court for the payment of costs of winding up the Loan Parties' Chapter 11 cases, not to exceed $75,000.00 in the aggregate, and (c) allowed United States Trustee |

9

<table>
<tr><td></td><td>administrative expenses pursuant to 28 USC §1930(a)(b).  No part of the Carve-Out Amount shall be used to object to or contest any post-petition lien or post-petition obligations or to challenge (as opposed to investigate) any pre-petition credits or pre-petition lien or to otherwise seek affirmative relief against the Administrative Agent.</td></tr>
</table>

**II.     Significant Provisions of the Post-Petition Financing Governed by Rule 3(C)(viii) of the Southern District of Texas Procedures for Complex Chapter 11 Cases**

12.     As a condition to obtaining the proposed financing, the Administrative Agent and the Debtors have agreed to certain provisions that may be considered significant provisions to be highlighted to the Court and the parties in interest for purposes of the Court's complex procedures for chapter 11 cases.[4]  These provisions include:

- <u>Validity of Liens</u>.  The Debtors release any right to invalidate, reduce or otherwise impair, or to challenge the amount, priority or perfection of, the claims and obligations, or the liens or security interests, securing the Debtors' obligations under the Pre-Petition Loan Agreement, excluding certain permitted liens expressly mentioned in the New Loan Agreement.  Parties in interest, other than the Debtors, must file a complaint challenging the amount, validity or enforceability of the Prepetition Obligations by no later than 15 days following the later of the entry of the Interim Order or the appointment of an official committee of unsecured creditors.

- <u>Section 506(c) Waiver</u>.  The Debtors have waived and released, and will not assert a claim under Bankruptcy Code §506(c) for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the Administrative Agent upon the Collateral.

---

[4]     The descriptions provided herein are a summary of significant provisions of the Post-Petition Financing. Please refer to the New Loan Documents for exact terms and conditions.

5170176v2

- Super-Priority Administrative Expense.  The Administrative Agent is granted super-priority administrative expense status with respect to the Obligations under the New Loan Documents, with priority over any and all administrative expenses of the kinds specified in Bankruptcy Code §§503(b), 507(b) and 546(c), subject only to the Carve-Out.

- Priming of Liens. The Administrative Agent's liens and security interests under the New Loan Documents prime all competing claims and liens on or in the Collateral, including without limitation, its existing first-priority liens and security interests in the Senior Living Collateral (as defined in the New Loan Agreement) other than those liens held by Lancaster Pollard and Permitted Liens (as defined in the New Loan Agreement).

- Commitment and Origination Fees. On the Closing Date, the Company will pay to the Administrative Agent for the ratable benefit of the DIP Lenders a transaction fee in full in cash equal to 1.50% of the DIP Loan.  On the closing date and on each anniversary thereof if any obligations of the UGHS Senior Living under the New Loan Documents remain outstanding, UGHS Senior Living will be required to pay to the Administrative Agent:  (i) an annual loan servicing fee equal to $7,700.00; (ii) an annual loan administration fee equal to $7,000.00; and (iii) an annual third-party valuation fee equal to $35,000.00; each installment of each such fee shall be fully earned when due.  On the Maturity Date (as defined in the New Loan Documents) (or, if sooner, on the Termination Date), the Borrowers will pay to the Administrative Agent for the

11

ratable benefit of DIP Lenders an exit fee in full in cash equal to 1.00% of the DIP Loan.  Such fee will be fully earned when due and, once paid.

- The Administrative Agent required payment of up to $35,000 in reimbursable expenses for third-party costs associated with its evaluation of the proposed DIP Loan.  The Loan Parties deposited $15,000 prior to the execution of their DIP Loan term sheet.  The remaining $20,000, or the lesser amount of actual reimbursable expenses, shall be due at closing along with the payment of its legal fees incurred in connection with documentation of the New Loan Documents.

## APPLICABLE AUTHORITY

**I.      The Post-Petition Financing Should be Approved**

**A.      The Terms of the New Loan Documents Are Fair, Reasonable, and Appropriate**

13.      The Debtors believe that the terms and conditions of the Post-Petition Financing are fair, reasonable, and appropriate under the circumstances.

14.      The Administrative Agent has required that the Debtors grant the liens and superpriority claims contemplated by the Interim Order and the New Loan Documents upon the terms and conditions set forth therein.  Those liens and superpriority claims will be subject to the Carve-Out, which includes professional fees that are accrued and unpaid through the Maturity Date, and up to $75,000 in professional fees accruing after the Maturity Date, and amounts payable to the United States Trustee.  Such carve outs generally "preserve the adversary system" by ensuring that the committees and the debtor's estate are adequately assisted by counsel.  See In re Ames Dep't Stores, Inc., 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (noting that courts generally "insist on a carve out" for professional fees, and that "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced").  Additionally,

the Carve-Out protects against administrative insolvency during the course of the Chapter 11 Cases by ensuring that some assets remain for the payment of United States Trustee fees and certain professional fees of the Debtors, notwithstanding the grant of superpriority and administrative liens and claims under the Post-Petition Financing.

15.      Furthermore, the Post-Petition Financing provides the Debtors with the liquidity it needs to operate its businesses during the Chapter 11 Cases.  The Debtors' request for interim authorization seeks to use only that amount of loan proceeds under the Post-Petition Financing as is necessary to avoid immediate and irreparable harm to the value of their assets in accordance with Rules 4001(b)(2) and 6003 of the Bankruptcy Rules and the provisions of the Complex Case Procedures.

16.      The Post-Petition Financing will be used by the Debtors to fund reasonable and necessary business expenses – expenses that will allow the Debtors to continue business operations and preserve value for creditors – in accordance with the Budget. The Budget itemizes the sources and uses of cash and provides a projection of cash receipts and expenditures. The Budget includes a list of business expenses that are reasonable and necessary and that must be paid in order to continue the Debtors' business operations until such time as a final hearing on this motion can be held.  The Debtors request that during each two week period, they be permitted to vary their actual disbursements, total liabilities for expenditures committed to or assumed ("Expense Variance") or actual cash receipts ("Receipts Variance")  by not more than 5% over total amount shown in the Budget during such two week period provided that no Expense Variance and Receipts Variance shall exceed 10% for any cumulative period from and after the Filing Date.

17.     After thorough analysis by the Debtors and their advisors, they have concluded that the terms of the Post-Petition Loan Agreement are reasonable and appropriate under the circumstances. Bankruptcy courts routinely defer to a debtor's business judgment in considering whether to approve the debtor's request to obtain postpetition financing.  See e.g., Trans World Airlines, Inc. v. Travellers Int'l AG (In re Trans World Airlines, Inc.), 163 B.R. 964, 974 (Bankr. D. Del. 1994) (quoting order approving post-petition loan and receivables facility because such facility "reflect[ed] sound and prudent business judgment"); In re Ames Dep't Stores, Inc., 115 B.R. at 40 (The court should defer to debtor's "reasonable business judgment . . . so long as the financing agreement does not . . . leverage the bankruptcy process" and its purpose is to benefit the estate rather than another party-in-interest.).

18.     The Debtors exercised their reasonable business judgment in determining that the Post-Petition Financing is the best financing option available under the present circumstances, and the Debtors have satisfied the legal requirements to incur the obligations arising under the Post-Petition Financing on the terms and conditions set forth therein.  The Debtors believe that the New Loan Documents contain terms that are fair, reasonable, and in the best interests of the Debtors and their estates.  Accordingly, the Debtors respectfully submit that they should be authorized to enter into the New Loan Documents and obtain access to the Post-Petition Financing on the terms described herein.

## B.     The Debtor Should Be Authorized to Obtain Postpetition Financing on a Senior Secured and Superpriority Basis

19.     Section 364 of the Bankruptcy Code allows a debtor to obtain (a) unsecured credit in the ordinary course of business, (b) unsecured credit outside the ordinary course of business, (c) credit with specialized priority or with certain security interests, and (d) secured credit by granting a senior or *pari passu* lien on already encumbered property.  In other

14

words, section 364 is "structured with an escalating series of inducements . . ." that may be offered to attract postpetition financing.  Sapir v. CPQ Colorchrome Corp. (In re Photo Promotion Assocs., Inc.), 87 B.R. 835, 839 (Bankr. S.D.N.Y. 1988), aff'd, 881 F.2d 6 (2d Cir. 1989).  Accordingly, if a debtor cannot obtain postpetition financing on an unsecured basis under sections 364(a) and (b), the bankruptcy court may authorize a debtor to obtain postpetition financing on a superpriority administrative expense basis pursuant to section 364(c), secured by a senior lien on unencumbered property or secured by a junior lien on encumbered property.

20.     Courts consider various factors in determining whether a debtor may obtain postpetition financing under section 364(c) of the Bankruptcy Code, including whether (i) the debtor is unable to obtain secured credit under section 364(b), (ii) the credit transaction is necessary to preserve the assets of the estate, (iii) the terms of the transaction are fair, reasonable and adequate given the circumstances of the debtor-borrower and the proposed lender, (iv) entry into the financing constitutes an exercise of the debtor's sound and reasonable business judgment, and (v) the financing was negotiated in good faith and at arm's-length between the debtor and the lender.  In re Farmland Indus., Inc., 294 B.R. 855, 879-81 (Bankr. W.D. Mo. 2003); see also In re Aqua Assocs., 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991) (applying factors 1-3).

21.     To satisfy the requirements of section 364(c) of the Bankruptcy Code, a debtor need only demonstrate "by a good faith effort that credit was not available" to the debtor on an unsecured or administrative expense basis.  Bray v. Shenandoah Fed. Savs. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986). "The statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." Id.  When few lenders are likely to be able and willing to extend the necessary credit to a debtor, "it would

be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." In re Sky Valley, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd sub nom., Anchor Savs. Bank FSB v. Sky Valley, Inc., 99 B.R. 117, 120 n. 4 (N.D. Ga. 1989); see also In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (approving financing facility and holding that the debtor made reasonable efforts to satisfy the standards of section 364(c) where it approached four lending institutions, was rejected by two, and selected the most favorable of the two offers it received).

22.     Due to the existing prepetition liens and security interests on the Debtors' assets, the Debtors are unable to procure sufficient debtor in possession financing in the form of either unsecured credit under Bankruptcy Code sections 364(a) or (b), solely in exchange for the grant of an administrative expense or superpriority administrative expense claim or on a junior lien basis under section 364(c) of the Bankruptcy Code.  None of the potential lenders were willing to commit to postpetition financing on these terms.

23.     Based on the foregoing, the Debtor believes that it would not have been able to obtain debtor in possession financing on more favorable terms from other sources.  See, e.g., Bray v. Shenandoah Fed. Savs. & Loan Ass'n, 789 F.2d at 1088 (Section 364 "imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable.").

## C.     The Debtor Should Be Authorized to Obtain Postpetition Financing Secured by Priming Liens

24.     If the incentives available under Section 364(c) are insufficient to attract post-petition financing, a bankruptcy court may authorize post-petition credit under section 364(d) secured by a senior or *pari passu* lien on encumbered property (i.e., a "priming" lien) without consent from the affected lienholders if (i) the debtor cannot otherwise obtain credit and

(ii) the interests of the existing lienholders are adequately protected.  See 11 U.S.C. § 364(d)(1); In re 495 Cent. Park Ave. Corp., 136 B.R. 626, 630-31 (Bankr. S.D.N.Y. 1992); In re Aqua Assocs., 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991) (listing the above factors and also requiring that the "credit transaction" be "necessary to preserve assets of the estate").

25.     The Debtors approached several institutions to serve as potential financing sources, conducted arm's length negotiations with each of them, and ultimately determined that the Administrative Agent offered the best available option for obtaining postpetition financing. In fact, the Debtors were unable to obtain postpetition financing of the type and size needed without the inclusion of liens senior to the interests of all liens other than those held by Lancaster Pollard.  The priming liens ultimately required by the Administrative Agent, however, are more limited in scope than the priming liens sought by other potential lenders because they will be subordinate to the senior secured liens held by Lancaster Pollard.  The Debtors, therefore, do not believe that any existing creditors are harmed by such priming.

**II.     Modification of the Automatic Stay is Warranted**

26.     The New Loan Documents and the proposed Interim Order contemplate that on or after the Maturity Date (as defined in the New Loan Documents), the Administrative Agent may, acting pursuant to the New Loan Agreement, exercise its rights and remedies and take all or any contained therein or in this Order without further relief from the automatic stay pursuant to Bankruptcy Code §362(a) or any other applicable stay or injunction and without or further order of or application to this Court.  The Interim Order provides that the Administrative Agent must provide the Debtors with five (5) business days' prior written notice before exercising any enforcement rights or remedies, which will entitle the Debtors to seek an

5170176v2

emergency hearing with the Court for the sole purpose of contesting whether, in fact, an Event of Default has occurred and is continuing.

27.    Stay modification provisions of this sort are ordinary features of postpetition financing arrangements, and, in the Debtors' business judgment, are reasonable under the circumstances. See, e.g., In re MPF Holdings US LLC, Case No. 08-36084 (Bankr. S.D. Tex. Feb. 18, 2009) (final order modifying automatic stay); see also In re United Retail Grp., Inc., Case No. 12-10405 (Bankr. S.D.N.Y. Feb. 22, 2012); In re MSR Resort Golf Course LLC, Case No. 11-10372 (Bankr. S.D.N.Y. Jan. 25, 2012); In re InSight Health Servs. Holdings Corp., Case No. 10-16564 (Bankr. S.D.N.Y. Jan. 4, 2011); In re Gen. Growth Props. Inc., Case No. 09- 11977 (Bankr. S.D.N.Y. May 14, 2009); In re Tronox Inc., Case No. 09-10156 (Bankr. S.D.N.Y. Feb. 6, 2009).

### III.    The Debtors Require Immediate Access to the Post-Petition Credit Facility

28.    The Court may grant interim relief in respect of a motion filed pursuant to Bankrtupcy Code Sections 363(c) or 364 where, as here, interim relief is "necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2), (c)(2). In examining requests for interim relief under this rule, courts generally apply the same business judgment standard applicable to other business decisions. See Ames Dep't Stores, 115 B.R. at 36.

29.    The Debtors and their estates will suffer immediate and irreparable harm if the interim relief requested herein, including authorizing the Debtors to borrow up to $350,000.00 upon the entry of this Interim Order and $1,050,000 upon the entry of the final order, is not granted promptly. The Debtors have insufficient cash to fund operations without immediate access to the DIP Loan. Further, the Debtors anticipate that the commencement of

18

these Chapter 11 Cases will immediately increase the demands on its free cash as a result of, among other things, the costs of administering the Chapter 11 Cases, addressing key constituents' concerns regarding the Debtors' financial health and ability to continue operations in light of the cases and making the payments authorized by other orders entered granting the Debtors' first day motions.

30.     Accordingly, the Debtors have an immediate need for access to the DIP Loan on an interim basis to, among other things, continue the operation of their business, fund fees and expenses necessary to obtain the DIP Loan, meet payroll, pay capital expenditures, procure goods and services from vendors and suppliers and otherwise satisfy their working capital and operational needs, all of which is required to preserve and maintain enterprise value for the benefit of all parties in interest.

31.     The importance of a debtor's ability to secure postpetition financing to prevent immediate and irreparable harm to its estate has been repeatedly recognized in this and other districts in similar circumstances. See, e.g., In re N. Bay Gen. Hosp., Inc., Case No. 08-20368 (Bankr. S.D. Tex. July 11, 2008) (order approving postpetition financing on an interim basis); In re MPF Holding US LLC, Case No. 08-36084 (Bankr. S.D. Tex. Feb. 3, 2009) (same); see also In re United Retail Grp., Inc., Case No. 12-10405 (Bankr. S.D.N.Y. Feb. 2, 2012) (order approving postpetition financing on an interim basis); In re MSR Resort Golf Course LLC, Case No. 11-10372 (Bankr. S.D.N.Y. Mar. 16, 2011) (same); In re Great Atl. & Pac. Tea Co., Case No. 10-24549 (Bankr. S.D.N.Y. Dec. 13, 2010) (same); In re The Reader's Digest Assoc., Case No. 09-23529 (Bankr. S.D.N.Y. Aug. 26, 2009) (same). Accordingly, for the reasons set forth above, prompt entry of the Interim Order is necessary to avert immediate and irreparable harm to

19

the Debtors' estates and is consistent with, and warranted under Bankruptcy Rule 4001(b) and (c).

## IV.    Request for Final Hearing

32.    Pursuant to Bankruptcy Rule 4001(c), the Debtors request that the Court set a date that is no longer than 30 days from the entry of the Interim Order as a final hearing for consideration of entry of the Final Order.

33.    The Debtors request that they be authorized to serve a copy of the signed Interim Order, which fixes the time and date for the filing of objections, if any, by first class mail upon the parties listed below in the Notice section. The Debtors further request that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001(c)(2).

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

34.    The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their businesses without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## NOTICE

35.    Notice of this Motion shall be given to (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to the Administrative Agent; (c) the

parties listed in the consolidated list of thirty (30) largest unsecured creditors filed by the Debtors in these Chapter 11 Cases; and (d) any such other party entitled to notice pursuant to the Local Rules.  The Debtors submit that no other or further notice need be provided.

**NO PRIOR REQUEST**

36.     No previous request for the relief sought herein has been made to this Court or any other court.

[*Remainder of Page Intentionally Left Blank*]

21

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and schedule a final hearing to consider entry of a Final Order, substantially in the forms annexed hereto, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: November 10, 2015
       Houston, Texas

Respectfully submitted,

PORTER HEDGES LLP

/s/  Aaron J. Power
John F. Higgins
State Bar No. 09597500
Aaron J. Power
State Bar. No. 24058058
Amy L. Tellegen
State Bar No. 24083954
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6000
(713) 228-1331 (fax)

Proposed Counsel for Debtors and Debtors in Possession

5170176v2