

ENTERED
06/27/2018

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| **UGHS SENIOR LIVING, INC.,** *et al,* | § | **CASE NO: 15-80399** |
| Debtors. | § | |
| | § | |
| | § | |
| | § | Jointly Administered Order |
| | § | |
| | § | **CHAPTER 11** |

## MEMORANDUM OPINION

Donald W. Sapaugh filed two proofs of claim in the consolidated chapter 11 bankruptcy case of UGHS Senior Living, Inc. and its associated entities ("Senior Living"). Sapaugh's proofs of claim assert a right to repayment for $189,495.01 based upon a loan Community Bank of Texas made to UGHS Senior Living, LLC, which Sapaugh personally guaranteed. (Claim No. 22-2 at 2). Chad J. Shandler, the Liquidating Trustee, filed an objection to Sapaugh's claim, alleging that Senior Living owed Sapaugh no obligation under the asserted claims. (ECF No. 403 at 3–4).

Sapaugh's late-filed proof of claim and supplementary information fail to indicate whether money from the renewed loan was procured or used for the benefit of UGHS Senior Living, LLC or other Senior Living entities.

Accordingly, the Court denies Sapaugh's late filed proof of claim.

## Background

Trinity Care Senior Living, Inc. purchased three senior care facilities in 2011, one located in Tennessee and the other two in Texas. (ECF No. 341 at 9). Senior Living was owned by University General Health System, Inc. ("UGHS"), which operated a comprehensive health care hospital system in the Houston and Dallas areas. (ECF No. 341 at 10).

After experiencing significant financial struggles, UGHS sought to sell the Senior Living component of its business and signed an asset purchase agreement with Cornerstone Healthcare Holdings in 2014. (ECF No. 341 at 10). However, as UGHS's finances deteriorated, UGHS was forced to file a voluntary chapter 11 bankruptcy petition on February 27, 2015, before the Senior Living sale to Cornerstone was completed. (ECF No. 341 at 10). UGHS then sought to consummate the sale of Senior Living to Cornerstone as part of its bankruptcy proceeding; however, the deal was cancelled when UGHS was unable to fulfill the terms of the original 2014 asset purchase agreement. (ECF No. 341 at 10).

UGHS subsequently withdrew its sale proposal in order to re-evaluate its options. (ECF No. 341 at 10). UGHS renewed negotiations and again reached a revised deal with Cornerstone in October 2015. (ECF No. 341 at 10). Senior Living and its affiliates then filed their chapter 11 bankruptcy petition on November 10, 2015. The Court confirmed the sale of Senior Living's assets under the terms of the 2015 asset purchase agreement on January 21, 2016. (*See* ECF No. 225). Senior Living subsequently proposed a liquidating bankruptcy plan that sought to distribute $300,000.00 to Senior Living's creditors. (ECF No. 341 at 9).

Donald W. Sapaugh served as the founder and CEO of Trinity Care Senior Living, Inc. Sapaugh claims that he applied for a loan with Founders Bank of Texas for $500,000.00 in 2010. The 2010 loan was subsequently renewed for $212,079.14 on July 28, 2015, with Community Bank of Texas, the successor to Founders Bank. (Sapaugh Ex. No. 2). Sapaugh also alleges that these loans were procured for the benefit and use of Trinity Care Senior Living, LLC, despite the fact that the loan documents list Sapaugh as the borrower rather than Senior Living. (*See* Sapaugh Ex. No. 2).

Sapaugh filed two proofs of claim related to these loans in the bankruptcy cases of the Senior Living entities. Claim 20-1 was filed in the UGHS Senior Living, Inc. case and seeks the repayment of $189,495.01 owed to Community Bank of Texas. (Case No. 15-80399; Claim No. 20-1 at 2). Sapaugh filed Claim 22-1 on February 9, 2018, in the UGHS Senior Living, LLC case in order to amend his previously filed proof of claim and provide supporting documentation for his claim. (Case No. 15-80400; Claim No. 22-2 at 2). However, Claim 22-1 was submitted after the April 11, 2016 claims bar date had passed. (Case No. 15-80400; Claim No. 22-2 at 2).

Chad J. Shandler, the Liquidating Trustee, filed an objection to Sapaugh's first proof of claim, arguing that Senior Living owed no obligation to pay Sapaugh because the debt in question was owed to Community Bank of Texas, which never filed a proof of claim, rather than Sapaugh. (ECF No. 403 at 3–4). The Trustee failed to file an objection to Sapaugh's second proof of claim, believing that it was barred due to late filing. (April 10, 2018 Hearing at 3:09 p.m.).

The Court held a hearing regarding Sapaugh's claims and the Trustee's corresponding objection on April 10, 2018. At the hearing, a dispute arose regarding whether Claim No. 22 in the Senior Living, LLC case was admissible because it was filed after the claims bar date had passed on April 11, 2016. (April 10, 2018 Hearing at 3:09 p.m.). Sapaugh presented an oral motion to amend his timely filed Claim No. 20 and replace it with the late-filed Claim No. 22. (April 10, 2018 Hearing at 3:15 p.m.). The Court set the motion for immediate hearing. (April 10, 2018 Hearing at 3:15 p.m.).

At the conclusion of the hearing, the Court held that Sapaugh must provide additional briefing citing to specific parts of the written record (not testimony) demonstrating whether the loan advances in question were made for the benefit of a Senior Living entity rather than

Sapaugh individually. (April 10, 2018 Hearing at 5:28 p.m.). The Court took the matter under advisement on April 22, 2018.

## Jurisdiction

The District Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

## Analysis

Leave to amend a proof of claim should be given freely, when justice so requires. FED. R. CIV. P. 15(a)(2); *Forman v. Davis*, 371 U.S. 178, 182 (1962). To determine whether justice requires allowing an amendment, courts examine several factors such as: (1) undue delay, (2) bad faith, (3) dilatory motive by the movant, (4) repeated failure to cure deficiencies in prior amendments, (5) undue prejudice to the opposing party if the amendment is allowed, and (6) the futility of the amendment. *Forman*, 371 U.S. at 182; *Torch Liquidating Trust v. Stockstill*, 561 F3d 377, 390 (5th Cir. 2009); *In re DePugh*, 409 B.R. 84, 100 (Bankr. S.D. Tex. 2009).

In this case, the factor that weighs most heavily against Sapaugh's argument is the futility of the amendment. In his amended proof of claim, Sapaugh alleges that his right to repayment exists because of a loan provided from Community Bank of Texas to Senior Living that he personally guaranteed. (Claim No. 22-2 at 1–3). Bankruptcy Rule 3005(a) allows entities other than the debtor who may be liable for a debt to a creditor, such as a personal guarantor, to file a proof of claim. However, the documents Sapaugh attached as evidence of his claim indicate that the borrower of the renewed loan was Donald W. Sapaugh individually and the collateral for the loan was comprised solely of Sapaugh's equity shares in UGHS. (Sapaugh Ex. 3 at 2).

None of the loan documents indicate that the loan in question was procured for Senior Living's benefit or that Senior Living was obligated to repay the amounts borrowed. (*See*

Sapaugh Ex. 3 at 9 ("Donald W. Sapaugh and William Mcilwain ("Borrower") jointly and severally promise to pay to Founders Bank, SSB")).  If Senior Living did not receive the proceeds from the loan, allowing Sapaugh to amend his proof of claim is futile because Senior Living bears no liability on the loan.

At the April 10, 2018 hearing, the bulk of evidence Sapaugh presented regarding Senior Living's liability under the loan referenced a loan procured in 2009 for $500,000.00 Senior Living made with Community Bank's predecessor.  (Sapaugh Ex. 5–7). The evidence demonstrated Senior Living's intent to repay the loan; yet, none of the documents presented evidence any *benefit* to Senior Living from the loans Sapaugh obtained from Community Bank and its predecessors.

Sapaugh's supplement cites to two additional pieces of information that purportedly establish that Sapaugh accrued the debt in question for the benefit of a Senior Living entity.  The first is the "Unanimous Written Consent of Directors," which states that, if members of the LLC utilized personal funds to operate Senior Living, those expenses would be treated as notes payable from Senior Living to the members.  (ECF No. 427 at 3).  Sapaugh suggests that this document supports the "intent of [Senior Living] to repay the personal loans of the Members made to the company and to treat them as ***debts*** of [Senior Living]." (ECF No. 427 at 4).

Although this document may show that Senior Living intended to repay advances made to Senior Living, it fails to address the Court's request that Sapaugh demonstrate whether the loan funds were provided to or for the benefit of Senior Living. (April 10, 2018 Hearing at 5:28 p.m.).  Absent information demonstrating that the funds were expended for the benefit of a Senior Living entity, the organization would have no obligation to repay Sapaugh any amount he

personally incurred. Standing alone, the Written Consent of Directors is inadequate to satisfy Sapaugh's burden of proof.

The second piece of evidence Sapaugh provided is the bank records of Senior Living, LLC's Wells Fargo account. (ECF No. 427 at 4–5). Sapaugh claims that these bank records demonstrate that money was deposited from the Founders Bank loan (Community Bank of Texas's predecessor) directly into Senior Living's account. In Sapaugh's estimation, the bank records "clearly show that [Senior Living, LLC] received the loan proceeds and benefitted from the loan proceeds." (ECF No. 427 at 5).

The transactions involve seven transfers made from July 2009 to June of 2010 ranging in amount from $125,000.00 to $25,000.00. (ECF No. 427 at 4). The amount allegedly transferred from the loan to Senior Living, LLC totaled "at least $355,000.00." (ECF No. 427 at 4). Sapaugh also connected these bank records with admitted exhibits such as the Senior Living, LLC account report. (*See* Sapaugh Ex. 6). While it is true that these documents demonstrate that at least some loan proceeds from a Founders Bank loan were provided for the benefit of Senior Living, LLC, the transfers Sapaugh provided occurred on or before June 24, 2010. (ECF No. 427 at 4). These transfers fail to coincide with the loan documentation Sapaugh provided as his amended proof of claim which reference a loan obtained in Sapaugh's name on July 28, 2010, nearly a month after the transfers occurred. (Claim No. 22-2; Ex. 2 at 7)(*See* Sapaugh Ex. 4).

None of the transactions in question demonstrate that money from the 2010 loan was transferred to Senior Living, LLC or Senior Living, Inc. Sapaugh provided the Court with no evidence that any money was transferred after June 24, 2010 from the loan for the benefit of Senior Living.

A court may deny an amendment to a proof of claim if amending the claim proves futile. *Forman v. Davis*, 371 U.S. 178, 182 (1962).  The additional information Sapaugh provided demonstrates that some money from the original loan was transferred to Senior Living, LLC between 2009 to 2010.  However, the information provided fails to show that Sapaugh provided any money to Senior Living, LLC after executing the 2010 loan with Founders Bank, which forms the basis of his proof of claim.  Accordingly, without sufficient evidence to conclude that the loan was procured for the benefit of Senior Living, LLC, allowing Sapaugh to amend his proof of claim would prove futile since Senior Living, LLC had no liability for the loan renewal.

## Conclusion

The Court will enter an Order consistent with this Memorandum Opinion.

SIGNED **June 24, 2018.**

                                      Marvin Isgur
                      UNITED STATES BANKRUPTCY JUDGE