

ENTERED
06/27/2018

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| IN RE: § | |
| UGHS SENIOR LIVING, INC., *et al* § | CASE NO: 15-80399 |
| § | Jointly Administered Order |
| Debtor(s) § | |
| § | CHAPTER 11 |

## MEMORANDUM OPINION

University General Health System Senior Living, Inc. ("Senior Living") and several of its affiliates filed for chapter 11 bankruptcy on November 11, 2015. (*See* ECF No. 1). Edward T. Laborde, Jr., a member of Senior Living's board of directors, filed a proof of claim in Senior Living's bankruptcy case asserting the right to indemnification for $160,833.00 in payments Laborde purports he made on behalf of Senior Living during legal proceedings with creditors. (*See* Claim No. 22-1). The Liquidating Trustee, Chad J. Shandler, objected to Laborde's claim, arguing that indemnification is inappropriate.

Laborde's unsecured claim arising out of his indemnification rights is granted.

### Background

Dr. Hassan Chahadeh founded University General Hospital in Houston, Texas, as a physician-owned, general acute care hospital. (Case No. 15-31086, ECF No. 2 at 3). The hospital was originally formed as a partnership under University General Hospital, LP; however, in 2011, the hospital sought to grow and expand its range of health services offered to patients. (*Id*. at 5). The founding partners consequently raised $11,000,000.00 in new equity capital and exchanged their ownership interests in the limited partnership for shares in the newly formed University General Health System, Inc. ("UGHS"). (*Id*.). UGHS became the owner of University General Hospital, LP along with several other affiliates: University General Health

Hospitals, Inc.; UGHS Ancillary Services, Inc.; UGHS Real Estate, Inc.; and UGHS Management Services, Inc. (*Id.* at 5). In 2011, UGHS also acquired Trinity Care Senior Living in exchange for UGHS Common Stock, cash, and subordinated notes under the umbrella of UGHS Senior Living, Inc ("Senior Living"). (*Id*. at 5).

UGHS expanded beyond the Houston area in 2012 when it acquired the South Hampton Community Hospital in Dallas, Texas. (*Id*. at 7). UGHS financed the acquisition with a $28,500,000.00 loan from First National Bank of Edinburg secured by the hospital in Dallas as well as an unsecured guarantee by UGHS. (*Id*. at 7). However, UGHS's projections about the profitability of the Dallas hospital proved inaccurate and led to significant losses of approximately $1,000,000.00 a month. (*Id*. at 8).

To mitigate these financial struggles, UGHS sought to sell Senior Living and its affiliated entities. (*Id*. at 12). UGHS retained a marketing professional, found a willing purchaser, and agreed to an asset purchase agreement with that purchaser. (*Id*.). The transaction was expected to eliminate approximately $30,000,000.00 of UHGS's debt. (*Id*.). However, before the transaction closed, UGHS's struggles culminated in liquidity issues so severe that creditors demanded cash payments before providing critical goods. (*Id*. at 14). The situation became more serious after the Dallas hospital was placed in receivership, UGHS's bank accounts were garnished, and creditors began executing on judgments against UGHS. (*Id*.). This ultimately forced UGHS and its affiliated entities to file chapter 11 bankruptcy petitions. (*Id*.).

Edward Laborde served as a Director, General Counsel, and Secretary of UGHS from January 2011 to January 2016. (Claim No. 26-1 at 4). Laborde claims that, during that time, he was individually named in legal proceedings after several affiliates lost their corporate status due to unpaid franchise taxes. (*Id*.). In total, Laborde claims to have spent $160,833.00 defending

these suits, leading him to file a proof of claim asserting his right to indemnity arising from his employment agreement with UGHS along with Senior Living's founding documents. (*Id*.).

The Trustee filed an objection to Laborde's claim, arguing that it should be disallowed in its entirety under 11 U.S.C. § 502(e)(1)(B) as a contingent claim for reimbursement for which both Laborde and the debtor share liability. (ECF No. 404 at 3–4). The Trustee also disputes whether Laborde has an existing state law claim against Senior Living since the debts in question arose from the defense of affiliates other than Senior Living. (March 27, 2018 Hearing at 2:35 p.m.).

The Court held an evidentiary hearing on March 27, 2018 and narrowed the issue in dispute to whether an implicit request for defense was sufficient to trigger indemnity on behalf of Senior Living under Texas law. (March 27, 2018 Hearing at 2:35 p.m.).

## Jurisdiction

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

## Analysis

Texas law recognizes two forms of corporate indemnity: mandatory and permissive. TEX. BUS. ORG. CODE §§ 8.051, 8.101. Mandatory indemnification occurs when an officer is wholly successful defending the merits of the proceeding. § 8.051. Permissive indemnification allows a corporation discretion to indemnify an officer who acted in good faith and reasonably believed the actions taken were in the corporation's best interests. § 8.101. The parties do not dispute that permissive indemnification is appropriate in this case because "the corporation chose

to indemnify [Laborde] for anything it asked [him] to do." (March 27, 2018 Hearing at 2:46 p.m.).

Yet, UGHS failed to explicitly request, through board resolution or similar action, that Laborde take action on their behalf. They neither directed that Laborde's indemnification from his employment agreement would be invoked nor directed that he defend the affiliates. Thus, Laborde's costs of litigation, which accrued when the UGHS affiliates lost their corporate charters, may only be indemnified if an implied request to defend the affiliates existed which was sufficient to trigger indemnification.

The issue of whether a request for services may be implied across affiliates has yet to be directly addressed under Texas law. However, Texas courts have held that indemnity contracts are analyzed through the same legal standards as other contracts. *Crimson Expl., Inc. v. Intermarket Mgmt, LLC*, 341 S.W.3d 432, 441 (Tex. App.—Houston [1st Dist.] 2010) (quoting *Safeco Ins. Co. of America v. Gaubert*, 829 S.W.2d 274, 281 (Tex. App.—Dallas 1992)). Accordingly, the Court must interpret the language of the agreement in order to give effect to the intent of the parties. *Id*.

As an officer of UGHS, Laborde signed an employment agreement that contained a specific indemnification provision:

> [UGHS] shall indemnify [Laborde] with respect to matters relating to [Laborde's] services to the company *or any of its Affiliates* . . . to the extent permitted by applicable law and as set forth in the Company's Certificate of Formation, the Partnership Agreement and otherwise in accordance with the terms of any other indemnification which is generally applicable to executive officers of [UGHS] *or any of its Affiliates* that may be provided by [UGHS] or any such Affiliate.

(Claim No. 26-1 at 6) (emphasis added). Additionally, Article X of Senior Living's Certificate of Formation also addresses the indemnity of corporate officers:

> The corporation shall indemnify any person who was or is a party. . . by reason of the fact that he is or was a director. . . against all judgments, penalties, fines, settlements and reasonable expenses (including attorney's fees and court costs) incurred by him in connection with such action, suit, or proceeding to the fullest extent permitted by any applicable law. The right to indemnification under this Article X shall be a contract right and shall not be deemed exclusive of any other right to which those seeking indemnification may be entitled . . . .

(Laborde Ex. 1 at 3).

The language of these indemnification provisions fails to directly address the issue of whether an implied request may trigger indemnity. However, the provisions in question are broadly worded and are not qualified or conditioned on prior events. Laborde's employment agreement states that the indemnity applies to losses sustained by him with respect to work pertaining to UGHS affiliates to the extent allowed under the Certificate of Formation and applicable law. (Claim No. 26-1 at 6). Similarly, the Articles of Formation indicate that the corporation is to broadly indemnify its officers but does not specifically indicate that specific actions from either UGHS or Laborde are required to invoke indemnification. (See Laborde Ex. 1 at 3). *Contra Wescott Holdings, Inc. v. Monitor Liab. Managers, Inc.*, 2005 WL 2206196, at *3 (S.D. Tex. September 12, 2005) (denying corporate officer indemnity because corporate bylaws conditioned indemnity on prior "request of director or officer."). The broad wording of these indemnification provisions and the lack of prerequisite acts as conditions to indemnification support the idea that Senior Living intended to allow indemnification even absent an explicit request for defense.

Texas law also allows businesses to indemnify officers who act in good faith with the reasonable belief that their actions were in the best interest of the business. TEX. BUS. ORG. CODE § 8.101. In his testimony, Laborde stated that the actions he took while serving the other corporations were "in the interest of Senior Living." (March 27, 2018 Hearing at 2:35 p.m.).

This testimony was both credible and logical. Laborde was a senior executive with UGHS. His actions on behalf of the affiliates were within the scope of his employment, were reasonable, and were apparently undertaken in the interest of UGHS. The Trustee does not dispute that LaBorde's actions were both appropriate and within the scope of his work. No direct authorization was required.

Although the Trustee disputes whether UGHS is liable to Laborde, he does not argue that Laborde failed to comply with the permissive indemnification standards under Texas law. (*See generally* ECF No. 404). LaBorde's actions satisfied the statutory requirements for permissive indemnity, supporting his right to indemnification. Additionally, both the Senior Living articles of incorporation and Laborde's employment agreement allow for indemnification to the extent permitted by applicable law. (*See* Claim No. 26-1 at 6; Laborde Ex. 1 at 3). Accordingly, Laborde's indemnity is consistent with the intent of the employment agreement because Laborde acted within the bounds of Texas law, even without an explicit request for defense.

### Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **June 27, 2018.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE